I concur in the opinion just pronounced by the chief justice as to the construction of the first and sixth sections of the act of limitation. A difference of opinion as to the true construction of the eleventh section, makes it necessary for me to concur with qualifications.
The defendant in this case administered on the estate of John Wilson, with the will annexed, and gave bond for the faithful administration of the estate. Elexine Wilson who was entitled to a share of the estate, was an infant at the date of this bond, and the will of her father directs that her share of his estate shall not be paid to her until she arrived at full age. During her infancy she married William Hazzard, the plaintiff, and on her arriving at age, which was more than six years from the date of the bond, this suit was commenced for her share of the estate. The act of limitation is pleaded in bar of the action, and her infancy is replied.
The act declares that no action shall be brought upon any administration bond after the expiration of six years from the date of such bond: provided, that if the person entitled to any action upon such bond, shall have been at the time of the accruing of the cause of such action, under disability of infancy or coverture, that act shall not be a bar to such action during the continuance of such disability, nor until the expiration of three years from the removal thereof.
The breach assigned of the condition of the defendant's bond is, that the defendant did not pay over to Elexine Wilson, now Mrs. Hazzard, on her attaining full age, her share of her father's estate. When this portion became payable, Mrs. Hazzard was under the disability of coverture, and the act says that if the person entitled to any action on this bond shall have been at the time of the accruing of the cause of such action under disability of coverture, that act shall not be a bar to such action during the continuance of such disability, nor for three years after the removal thereof. If the object of this saving *Page 477 
clause was to benefit the wife alone, to suspend her right of action during coverture, and revive it upon her husband's death, why was it said that the act should not be a bar to any such action eitherduring the coverture, or for three years after discoverture? Why did not this act follow the provision of the old act of limitations, under which the decision in Shankland's case was made, and save to the feme covert, not the right of action during coverture, but the right "of bringing such action within three years after being discovert." There cannot be a doubt that the change made in the saving clause of the new act of limitation effects a change of the law as it was settled in Shankland's case, and we have very little doubt that it was the express design and object of the legislature to make such a change. The decision in Shankland's case was upon the point, that the old act of limitations, which barred the bond as this does in six years after its date, did not save a feme covert's right of actionduring coverture, but only saved to her personally, the right to bring action after her husband's death; the present law in express terms declares, that if the person entitled to the action shall have been a married woman when the cause of action accrued, the act shall be no bar to such action, either during her coverture, or for three years after. Mrs. Hazzard is entitled to an action on this bond for her distributive share; the action accrued when she was a feme covert, and we must blot out of the saving clause the words "during the continuance of such disability" or hold that any action brought for this cause of action and in her right, during the coverture is barred by the statute.
The saving is not personal to Mrs. Hazzard, but is a saving of the right of action, and in this respect differs in terms from the saving in the eleventh section, as to the time for appealing from the administration accounts, which a majority of the court have regarded as a personal saving to the wife that could not be communicated to another, who sued for his own benefit though in her right. The language of that saving clause is, that in respect to anyperson under disability of infancy or coverture at the time of the settlement of the account, this limitation shall begin to run only from the ceasing of such disability.
If this be not the true construction of the act, a contrary one would make it limit a cause of action before it accrued. It would become an act not to restrain the time within which a party should enjoy the right of bringing suit, but to take away that right altogether before it ever could have been exercised. The court would hesitate long *Page 478 
before they reduced an act of the legislature to such an absurdity; and if the words of the law compelled to such a conclusion, it would be a case, if there could be any case, for sacrificing the letter of the law to its undoubted object and spirit. The argument in the former case was, that the saving of the statute was only to protect the wife's disability to sue; and as the husband was under no such disability, it could not apply to him. I had then occasion to state my opinion that the act had no reference whatever to the husband's ability or disability, but protected the wife's infancy whether any one else, guardian, next friend or husband, had or had not the power to sue for her; but the argument now is, that the protection of the statute thrown over the wife's infancy, and which the law says shall continue during all her infancy and for three years longer, is taken away by her marriage, although that marriage gives no power of bringing suit either to her or her husband, before she comes of age. Our present construction of the act, instead of being open to the objection that it keeps alive a right of action against sureties beyond the time designed by the law, or which good policy would allow, will have a contrary effect. If the husband has the right to enforce the action of the wife during coverture, it will close the matter and fix or relieve sureties sooner than the contrary construction, which denies to any one the right of suit during the coverture; but suspends the suit over the heads of sureties only during the husband's life, to be revived with all its consequences and force after his death. It were far better to have it settled and brought to a close during the husband's life, than to defer and keep alive this responsibility to such an indefinite period.
 Judgment for plaintiff.
These cases were subsequently, during the same term, tried before a jury. On this trial the principles of calculating interest for and against administrators and guardians were much discussed; and the court directed the jury on that subject, as follows: —
By the Court. — The defendant is charged in the administration account with all the money that came to his hands, and interest upon it up to the settlement; and he is now to be charged with interest upon the balance from the date of the account to this time. He has made several payments on account of the maintenance and support of the party entitled to this balance, and some payments to her guardian, upon which he ought to be allowed interest.
But the principle of calculating this interest, from what time, and *Page 479 
to what time; is important to be settled. In payments towards bonds and mortgages the payment is deducted out of interest due first, and then out of principal. It would be impossible to do that in this case, because the amount in which the administrator was indebted to the estate of plaintiff's father, was not ascertained when the payments were made. In the settlement of running accounts, the principle is to calculate interest on both sides from the time of payment to the settlement of the accounts, which is the principle upon which the defendant claims to be allowed interest in this case. But that principle is not correct in respect to this matter; and if applied to a long series of years, would produce injustice to the minor. The rule of the Orphans' Court is to apply the guardian's payments to the receipts as fast as those receipts are ascertained to be in his hands, that isyearly.* The receipts of the year are charged to the guardian, with interest, and his disbursements allowed, with interest up to the end of the year, first out of interest. This is neither the mode of applying payments to bonds, nor of settling mutual accounts, but is a combination of both. The payment is not deducted at the time it is made, as it would be if it was a bond payment; neither is it held in suspense and bearing interest until a final settlement; but annual rests are made and the payments applied at the end of the year. If the defendant had been the guardian of this plaintiff at the time he made these payments for her maintenance and support, he would have been allowed interest on the payments until the end of the year, which would be the first opportunity of deducting them from his receipts. His payments as a trustee ought not to place him in any better situation, and they ought to be deducted from his receipts or the amount in hand at the earliest period when that deduction can be made, which is the date of his administration account. The payments, therefore, with interest from their date, are to be deducted from the balance appearing on the administration account, and then interest is to be calculated on that balance to this time.
As to the commissions and charges for passing the trustee account, they are not to be allowed. There is no authority for passing such accounts; and, though the court has held that actual payments made by any person for the necessary support and maintenance of a minor who has no guardian, may be pleaded as a defence to the claim of *Page 480 
such minor, it has never gone so far as to allow the person making such payment, commissions for his care and trouble. He is a mere volunteer, without authority or responsibility as a guardian; and, though it may be hard to refuse any allowance for care and trouble, we think it would be a dangerous precedent to allow it in such a case as this.
The court suggested the propriety of each party making a statement and calculation according to these principles, to be submitted to the jury, but the plaintiff's council declined, and the court refused to let the defendant's counsel submit his statement alone.
The jury came into court with a verdict for $3,566 20. Before it was entered, the defendant's counsel asked that the jury might be permitted to explain the principles upon which they had arrived at that result; or, at least, submit their calculations; as a calculation made according to the charge of the court produced a different result.
The Court said: — No one has the right to demand of the jury the principles or reasons of their verdict; but if the jury choose to return, together with their verdict, a statement of the calculation by which, in a mere matter of figures, they have arrived at a certain sum, the court would inspect that calculation and point out to the jury any merely clerical error which they had committed, and give the jury an opportunity to correct that error if they please; but the court do not require any such statement of the jury. (See 3 Chit. Gen. Prac. 921.)
The jury returned to their room and after being absent about ten minutes, came into court with a, written calculation which they delivered, together with their verdict, showing an amount of $3,566 20.
* So decided in Brown vs. Boone, Orphans' Court, Kent, October term, 1833. Quere. — Ought it not, since the act of 1835, to be biennially?
 Verdict accordingly.
Whereupon the defendant's counsel gave notice of a motion for a new trial; which was afterwards argued by Mr. Ridgely, in support of the motion, and Mr. Houston, contra. The court stoppedMr. Ridgely, in reply.